Our first case, it's two consolidated cases, numbers 19-14969 and number 20-14149, United States v. Jason Gatlin. Mr. Caruso. It pleases the court. Michael Caruso from the Federal Public Defender's Office on behalf of this case, the government charged Mr. Gatlin with two types of commercial sex trafficking. Each separate offense that was contained in count one had a different mandatory minimum. Because of that charging decision, they submitted to the court and the court approved a verdict form that contains special interrogatories with regard to count one. The judge, as I said, gave that district court explained that verdict form. And in closing argument, the prosecutor carefully explained to the jury how she believed they should fill out that verdict form, answering the general question and answering the special interrogatories. After 11 hours of deliberation, the jury told the court they had reached a verdict. The judge reviewed that verdict form, asked the jury foreperson if all the members concurred in that verdict, to which the foreperson said yes. And then the verdict form and the verdict was published. In our view, that constituted a final verdict of the jury. And because that verdict answered the special interrogatories no, despite the fact that they answered the general question yes, because the special interrogatories were each essential elements of the offense, we believe that the judge at that point should have entered a verdict of not guilty for Mr. Gatlin on count one. No, go ahead. Go ahead. What basis are you arguing to us that we should reverse on on that claim? So we have three interrelated claims. One, we believe the due process clause required the court at that point to enter a verdict of not guilty. And our best case on that, of course, is the Randolph case we cited. There's the right to fair trial and then the double jeopardy clause. Yes, I think so. Our view is that at the point the jury rendered that final verdict, that was a jeopardy terminating event. And the judge's decision at the prosecutor's request to resubmit the case to the jury with what we believe is a coercive jury instruction would be a violation of Mr. Gatlin's right against being placed in jeopardy twice. And then the fair trial right is a combination of both those rights. OK, and that's how I read your briefing as well. My follow up question to that is how would the judge know which of those clauses were implicated based on the statement of counsel at the time? And let me be clear, I know you or anyone else from your office was not counsel in this case. I understand that. Yes, we were counsel initially and then we were we were terminated as counsel. So let me just finish the question with that caveat in there. When counsel made the statement and I'm not quoting it, I'm quoting it from memory of we asked judge that you enter you direct a verdict of not guilty. So we believe at the very least that preserved because he said that approximately, I think, three times, twice before the judge instructed the jury. And I think once after he instructed the almost word for word, exactly the same. He simply said enter a judgment of not guilty or a judgment of acquittal. We agree with that. So I think he's directed verdict. I don't think the word judgment. Yes. Our view, of course, is that the judge did direct a verdict through that instruction. But yes, he did use that phrase as well. So we would think under under Gowden, you know, that that that preserves clearly our due process claim, because, again, what the CJA counsel recognized is that the jury unanimously found that Mr. Gatlin did not commit essential elements of count one. And of course, under Gowden and that whole that whole line of cases that that would be not guilty. And as this court has said repeatedly, not only in the context of what lawyers must say at trial, that we're not we're not required to use magic words. We just need to do enough to put the judge on notice. And I'll also say that this court says the same of sentencing judges. We often have that issue where defendants claim the judges didn't use the right words and imposing sentence. And this court says magic words don't need to be used. Do you agree that there could be another basis that you could have argued? You didn't hear. But another basis to argue could have been an inconsistent verdict claim. Correct, because that's exactly what the the the what was argued in Shipley. Right. So there they made the same point. Judge, we want you to enter an acquittal here because the which to have argued under the Powell line of cases that that a verdict should be entered in your client's favor. Yeah. So, you know, I'm not listen, you know, I'm a trial lawyer as well. And I think I would have raised many, many objections at that stage. I have no doubt that you would. You know, at that stage of the proceedings, the inconsistent lines of cases that you referred to to Powell are, I think, quite different than what the lawyer and what Mr. Gatlin was faced with here. Right. Because those cases involve inconsistencies between two different counts or co-defendants in the same case. So I don't think I don't think that argument would be as squarely on point as the due process and double jeopardy. I don't disagree with you, but I guess what I'm asking is, could that have been? In other words, I'm trying to get in the trial judge's mind. And I feel for the trial judge was filling in, as you point out in your brief, for a very short moment in an otherwise complicated three minutes to resolve this issue at trial. So, you know, that judge is here's the statement, judge, we want you to direct a verdict of not guilty, at least in Shipley, that that statement or similar statement was interpreted as an inconsistent verdict statement. And in fact, the trial judge here said, I see this as inconsistent and ambiguous. And for that reason, I'm sending it back to the jury for clarification. Was that not an unreasonable, even if it's not ultimately the winning argument, is that not an unreasonable thought for the judge to have based on that statement of, hey, they're making an inconsistent verdict argument. And that's the remedy for that is sending it back. You know, I don't refer to the judge as being unreasonable. I think I think there's a better interpretation, which is not surprisingly, the interpretation I put forward in our briefs that that judge Dimitri Elias, just by the persistence of the lawyer saying not guilty. And I think actually, this is where when he says he asked for a directed verdict, that actually helps us because he's clearly saying they did not prove their case, as opposed to we don't really know what happened here, which which seems to be and you know, I think this is a terrible metaphor. But you know, in the older cases, they talk about you know, whose whose ox is being gored, because we don't because, you know, from those verdicts, they can't really tell what happened. Here, we absolutely know what happened. After 11 hours of deliberation, the jury found that the government didn't prove those essential elements of the offense. So I think I ask you a broader question, Mr. Caruso. So I think this is from reading all the case law or most of it. This seems to me to be a type of inconsistent verdict case, but a different type of case. It's sort of the logical what some courts have described as the logical impossibility. In other words, you can't render a general guilty verdict, while also finding the government hasn't proven one of the essential elements of the offense. So my question is, I guess, in some ways legal in some ways practical. Why choose the special interrogatory verdict over the general verdict in a situation like this one? Why is one constitutionally preferable or required as opposed to the other? Why, why can't the judge say, let's assume you're right, that jeopardy attached, and that sending it back was improper. Let's just assume that. Why, if that's the case, why choose the special interrogatory verdict over the general verdict? I know you've got support in a couple of cases, including the Second and Sixth Circuit cases, but I want you to tell me why that makes sense. I have two answers to that. One, there is an analog in the civil rules, because as you know, from your civil cases, there's a special rule, I think it's rule 49, that actually says one of the findings and enter a judgment on the basis. So there is some support, at least on the civil side for that. I would also say that, you know, I wouldn't accept then Judge Gorsuch's metaphysical impossibility with regard to this case, because I think there is a way to harmonize what had happened. And of course, we don't know, but this is my attempt to harmonize that the jury could believe that the general guilty answer was to all the elements except the ones that were set out in the special interrogatory. So that is a way to harmonize that. But to answer your question, you know, most directly, I think why we're on the best side of the Constitution is because after 11 hours of jury deliberation, we have concrete proof that the jury did not accept the government's case and found that they had not proved beyond a reasonable doubt that he had committed those essential elements. So I think if we give effect to anything, it has to be those specific rejections of the government's case. Can Justice Gorsuch write in Shipley, though, that our rule 57B, the criminal rule 57B, is broad enough to encompass exactly the rule you cited from the civil rules 49B, 3B? So he wrote that, but you have to remember then Judge Gorsuch was writing, and I point this out in the brief because he really does tease the appellate lawyer for not raising due process and double jeopardy, that all-encompassing criminal rule basically says a judge can act in the absence of a specific rule but has to act in accordance with law. And we would say, in this case, that law includes the due process clause and the double jeopardy clause, and our position as the judge would not have acted in accordance with that. I guess what I'm asking is, could the objection that was made by the government or the indication that was made by the government plus the response of, we want you to direct a verdict of not guilty, have implicated exactly the rule that we're talking about here of, hey, judge, this falls under the civil rule as incorporated into the criminal rule rather than a constitutional issue? You know, I didn't press that point. I think we're on firm ground with the Constitution. We don't think that the all-encompassing criminal rule saves the case here for the government because of the double jeopardy and due process implications. In any event, if the court doesn't rule in our favor on this issue, we think the jury instruction was clearly coercive. If you look at the . . . No, on that issue, I personally think that Mr. Gatlin has preserved his claims with regard to the verdict, but with regard to the instruction, there was no objection to the wording of that. There was an objection to giving any instruction, right? But there was no objection to, judge, if you're going to give an instruction, don't say this, say that. So it seems to me that our standard of review is a little more severe for you with regards to that claim. I agree. I think that's a fair reading of the transcript. I think we have shown plain error. You know, almost 60 years ago, the Supreme Court in Jenkins said one of the things a judge cannot do is tell a jury they must reach a verdict. And if you actually compare the instruction that was the district court gave in Shipley that then Judge Gorsuch explains, we can see that there are two key elements that are missing from our instruction here. One, Judge Dimitri Laius never told the jury they could stand on their verdict, and he never told them that he did not intimate any view as to what their verdict should be. If you read his instruction, basically he tells the jury how they can find Mr. Gatlin guilty three times. He tells the jury twice how they can find him not guilty. But the import of that is he tells them they must reach a verdict in this case. And I think that's plain error under Jenkins. You know, I would be remiss in not arguing that, you know, the government's prosecution for production of child pornography is beyond the plain language of that statute, as is their tampering count. They also never attempt to even try to argue that they meet the standard for the care, custody, and control adjustment under the guidelines as articulated by the Ninth Circuit and Brooks. And with that, I'll reserve the remainder of my time. All right, Mr. Caluso, thank you very much. Mr. Jumant. Thank you, Your Honor. May it please the court, that you're using the initially ambiguous verdict form, which I referred to as ambiguous because the government's position is that's precisely what it was. It was not an acquittal because, as the court pointed out, the form said guilty on count one in the general verdict. And we actually know with metaphysical certainty, to quote Justice Gorsuch, that this jury intended to convict this defendant because the judge sent it back for deliberation. No, no, no, argument. You're using hindsight. So you're saying because they later returned a verdict which showed guilty, they must have meant guilty the first time. I'm not sure that that's necessarily the case. Well, Your Honor, either way, I don't think you can tell either way. You've got a verdict that's completely inconsistent. Yes. To use your words, impossible to reconcile. Absolutely. And that is our essential point is that it is ambiguous. It's neither a guilty verdict and it's neither an acquittal. But I don't think you can say that anybody knows without any evidence for many jurors. And I'm not sure I'm not sure it would have been appropriate to question them anyways. But there certainly is no evidence in the record about what the jury meant to do the first go around with a verdict that was hopefully and hopelessly inconsistent. Your Honor, granted. But I am pointing out that what we are talking about doing now is undermining a verdict we do know was reached for this reason. And I think that's why it's important to focus on the real question here, which is under what circumstances may a judge find a verdict form to be ambiguous or inconsistent? Let me ask you a hypothetical. Sure. It's different than this case, but closer to some of the other cases the parties have talked about in their briefs. And I know again, I know it's not this case, but I want to sort of is jumping into this because Judge Smith is unavailable. And so neither he nor the lawyers figure out that there's an inconsistency and impossibility in the verdict. Jury gets polled. Everybody says that's my verdict. Nobody raises any other objection. Court accepts the verdict or verdict gets filed. There is an appeal. And the question is that it's a due process or double jeopardy violation and assume that those issues are preserved. Okay. What's the result? In this scenario, the judge did not ask the jury to continue deliberating. Am I getting it right? No, because everybody missed it. Right. So everybody missed it. So they take it. They poll the jury. You want the jury polled? Yes. You want them polled? Yes. They poll the 12. Everybody says that's my verdict. Judge says anything else? Anything else? No. Yes. Accept the verdict. Discharge the jury. Verdict gets filed. In that universe, we are in a situation like the cases cited by Mr. Gatlin of Pierce and Randolph and Lucarelli, where we have no way to know what the jury intended. And I want to know what the answer is. Then in those cases, you'd have an excellent argument that there should be an acquittal. Excellent or winning? I think it's a winning argument. You're forcing a court. Yeah. Right. Through no fault of figure out what do I do with this thing that is hopelessly inconsistent? Yes. And so your answer in that scenario, which I know is different than this one, is we do what? You acquit. And that's Randolph. So you agree with the Second and Sixth Circuits to that extent? I would agree. And that's Randolph and that's Lucarelli. But I will point out that all of those cases, Pierce says, if only the district judge had sent this back to the jury to consider it, we wouldn't be facing this problem. Well, it was a little more equivocal than that. It wasn't quite that definitive. I believe that maybe there was an option to do that. Right. I believe the quote is, Your Honor. Counsel, let me focus you a little bit. Believe me, it was more equivocal than what you stated. Okay. Let me focus you in a little bit more. Assume away the preservation issue, which I would like you to address at some point, but assume it away for the moment. The real question, it seems to me, is, was the judge allowed to ask, for whatever basis, to go and to reconsider or to take a further look to clarify whatever that is? Did that act constitute a violation of the due process clause or some form of double jeopardy? And it seems to me that question is based off of whether it was an acquittal at that moment or not. Because if it is an acquittal, that would seem to trigger double jeopardy problems. If it's not an acquittal, then it seems that the judge has discretion to act in some way. So when in this circuit, or is your best understanding of the law for when an acquittal happens for double jeopardy purposes? Your Honor, I don't know that I can draw that line. I can only say that we give the district court the discretion to make that call. I can suppose... No, no. That's illegal. The district doesn't have discretion to determine legally when an acquittal happens. An acquittal happens as a matter of law or it doesn't happen as a matter of law. And what I want to know is, what are the preconditions for when an acquittal happens? In other words, the triggering event for these constitutional claims. Your Honor, if, for example, they had said not guilty on count one and no to both of the sub questions, this would clearly have been an acquittal on count one. That doesn't seem to what your argument is. Because as I understand it, your argument is, in brief, I'm not here, you may have changed it and I want to know. In brief, you say that a jury is free to change its mind until the point that the judge says, this is accepted, sir, you are acquitted. We put the verdict. In other words, as the example that Judge Jordan gave you, when it's actually accepted by the court, filed, and everybody leaves for the day. That's when it's done. But until the point it's accepted, we know, at least in the poll context, a jury can get up when polled and say, no, that is not my verdict. In which case, the court can go and send it back for reconsideration. So my question to you again is, what is the government's position with regard to when an acquittal happens as a matter of law? What precondition has to happen? If the jury's response is unequivocal, then it would be an acquittal. Regardless of whether that verdict is accepted or not. So you're saying that, let's say that the jury checks off both the no, not guilty, and no is to each of the questions, and before they're coming out, three jurors immediately drop dead. And the judge has to declare a mistrial because the jurors are gone. The act of checking no is the point at which an acquittal happens? No, no, your honor. The point of checking no is filling out an unambiguous acquittal and then being polled, and then the judge accepting the essential requirements. I don't think polling is an option. Sometimes, in my experience, defense attorneys don't ask for a poll when they get an acquittal and it's announced in court. But you're saying the point at which the judge accepts is the point at which an acquittal happens. What's your best authority for that? Our best authority for that is the Chaftain, I'm sorry if I'm mispronouncing that case. Hold on. Chinchik, sorry, Chinchik, 655 F 2nd. It's a Fourth Circuit case. It says because the verdict was neither announced in open court nor accepted by the trial judge at the first trial, it was not a valid verdict of acquittal. Okay, so you need a verdict, right? Yes. A piece of paper where the jury tells the judge what it has decided, hopefully. Yes. You need the verdict being read in open court as Rule 41 requires, right? Yes. Okay. As Judge Luck indicated, polling is optional. So, I don't think polling is, for double jeopardy finality purpose, I don't think polling is required because parties can forego that. The rule makes it optional. So, you've got a verdict. Yes. You've got the verdict announced in open court. Nobody says, I want to poll. And the judge takes the verdict, right? And says, thank you very much, you're discharged. That's a verdict? Accepts the verdict, yes. Well, what does accept mean? I would say in this context, it means not find a fatal inconsistency or ambiguity in the verdict form. So, if the judge makes a mistake in not finding that, that inures to finality for double jeopardy purposes. Yes, that's Randolph and Luccarelli, and that's that scenario where the jury is long gone and we no longer know what they intend. But if we're not dealing with a situation where the jury just has flat out acquittal. Let me ask a variation of the question Judge Jordan just asked you. So, going back, you started this colloquy with me about, I think we're four or five minutes in, by saying that when they check no, that's unequivocally a not guilty verdict and that's an acquittal. And then you backtracked a little bit as we started talking about it. But let's say that the jury does check no on both, and it comes back, it's read in open court. Madam foreperson, is this your verdict? Yes, this is my verdict. Judge looks at it and says, this seems inconsistent. Judge is dead wrong. It's not inconsistent. But judge says, this is inconsistent. Go back and deliberate with a nice instruction. Is that not an acquittal? I think you have a problem there because the judge in that scenario has exceeded his authority. He's called something that is obviously. What's the error? Is the error a double jeopardy error? Is it a due process error? What is the error? I think in that context, I think it's a due process error, possibly a double jeopardy error. I think that is a concern that isn't present here, because we do have a very clear ambiguity. I know, but assuming preservation away, I think a critical part of the due process slash double jeopardy argument is the point at which there is an acquittal. And regardless of whether there is an ambiguity there or not, because that line is a critical line. I think it is. But I think if this is helpful, I think that line is the same line that you have between what would be an obvious acquittal and what would obviously be an ambiguous verdict, which would invoke the judge's powers under Rustelli and Cook, which is a Fifth Circuit case, which is precedential here, that the judge has the power to ask the jury to consider further if there's any uncertainty or contingency to the finality of the jury's determination. And if we allow the judge to have that power in some circumstances, the question then is, when does that power arise? Here we had a guilty on count one and no's on the two subsections. That's clearly ambiguous. But the judge had the power to ask the jury to continue going because it's clearly ambiguous. When you look at the cases like Rustelli, I mean, sorry, like Luccarelli and Pierce and Randolph, those courts didn't snap their fingers and say, well, this was obviously an acquittal. It took them pages and pages of analysis to come to the conclusion that after all of the law is considered, well, in this case, this ambiguity is fatal and we have to have an acquittal. Here, the judge, it didn't take very long to see that there was a complete inconsistency between what they said on the general verdict and what they said in the two subquestions. It's a clear ambiguity, and that's exactly the kind of thing that courts universally say. A judge is allowed to ask the jury to continue deliberating under Rule 31d. Can you answer a completely separate question for me? Yes. Isn't a lien error harmless if the mandatory minimum is not implicated? In other words, if the sentence is so far and away above the mandatory minimum, in fact, it hits the maximum for both scenarios, does it matter if the jury comes back with one or the other or not at all if there's a general guilty verdict? In other words, assume the second question wasn't there, there was a general guilty verdict. I apologize, Judge. I'm not sure what you're saying. In the context of a drug case, for example, if they don't find the mandatory minimum... Let's take a drug case if that makes it easier for you. Yes. So let's assume that there's no interrogatory, it's just a general verdict on an 841A1 in a cocaine case. What's the verdict? If they say guilty on... Right. What's the sentence have to be? It has to be the least possible one, right? Yes. You would say we don't have a finding that there's been a certain mandatory minimum. Right. So what if the maximum sentence, forget the mandatory minimum, but the maximum for the statute in our hypothetical here is exactly the same and the defendant gets the maximum? Again, if you want to treat the initial verdict form then as a finding of guilty on one of the two... Let's assume the second question wasn't there, you just have guilty. I guess, yeah, you could reduce it to the least highest maximum, I guess in that scenario. Again, I really think the focus here is on the question of whether the judge had the ability to do what he did and I think the case law is clear that he did and that he was right to do so given the fact that we had an ambiguity and the fact that we now know what the jury wanted to do. Can we talk about preservation? Yes. I appreciate the cue. We do think it matters under Hughes whether or not the defendant identified what particular constitutional grounds his argument was under. If he had specified that he thought there was constitutional error, the judge might have taken more time to consider it. He might have evaluated the cases. He might have seen Shipley and noted that there was a difference. He might have had to look to Highland, which is a case that addresses this issue in the double jeopardy context and finds that there's no problem under double jeopardy either. But the point is that under Hughes, the defendant has to at least identify which unconstitutional errors he could have claimed and so the court had no way to know that that was a constitutional issue at stake. He obviously preserved something, right? Yes. Yeah, clearly would have. What did he preserve? An inconsistent verdict argument, a non-constitutional claim, I think. Well, he expressly asked three times. Yes. Right? Or basically the same thing. He said, you've got to direct a verdict of not guilty. Yes. He said that three times, right? Yes. What did that preserve? It preserves something. What did it preserve? I think the claim that this was an acquittal and this was an inconsistent verdict and that you should give me the benefit of the doubt and just dismiss the case. That's one, certainly one. That's what he's arguing here. It is what he's, yes. So where's the preservation problem? Because of the disconnect between the legal theories? I think, I think constitutional. I mean, if you're, if you're telling me or telling us that he has preserved an argument that the verdict was hopelessly, well, I shouldn't say that, but those weren't your words. I don't want to put words in your mouth. That the verdict was inconsistent and that he was entitled to an acquittal. And he's preserved that here. That's what he's arguing here is the end result, right? Yes. So what is he not preserved in your view? The argument that is encompassed with, for example, a double jeopardy argument. Like we have to find that there was a final judgment that we have to find that there was an acquittal. We have to find that this is a new proceeding. All those things are implicated by a double jeopardy argument. They're not implicated by an inconsistent verdict argument. Which is a due process argument or what? I would say it's a due process argument. It might be a sixth amendment. He's preserved again. I don't want to put words in your mouth, but you think he's preserved a due process claim? I don't believe he's, he's preserved a constitutional claim. Okay. So tell me what it is then, because there's no, there's no federal statute that I know of, and maybe I'm wrong, that says that the remedy is X or the remedy is Y when you have an inconsistent verdict. It's all doctrinal case law, right? So what is he preserved? I'm just trying to pin you down. To the extent there is any daylight between it, I think there is a non-constitutional argument that this is an inconsistent verdict that should be dealt with and treated as a directed verdict. Is it a procedural argument? You could be based in rule 31D. You could be raised based in rule 57. It could be based on the premise that, which we don't think is the case, that the document itself is a clear acquittal that you ignore the general verdict in favor of the two sub questions. All of those would be non-constitutional. This is a question that's one of those double-edged swords for you. So it can in order to your benefit or to your detriment, depending on what we forgot in the end. But here's the question. You agree that he's preserved something, right? Yes. Okay. Your default is that he preserved non-constitutional stuff. Yes. Even though the non-constitutional stuff was not articulated. That's right. Why is it the case that we can't presume the constitutional stuff, even though it wasn't articulated because you're, you're assuming the lesser rather than the greater, because in part it's more beneficial to you, but you're doing it on a blank slate and you're and I'm wondering why that's necessarily the case. I think that's just our reliance on the Hughes case that says constitutional claims are treated differently, that there's a higher standard yet to be more specific. Well, isn't the real question for us, whether, and I think your opposing counsel said it exactly right, whether it puts the district judge on fair notice of what the claim was. In other words, the purpose of this isn't as some like, as some hurdle to, to stop people from the courthouse door. It's so that a judge can make a call right on the spot. So looking at it from that framework, what did, what did judge Dimitri Aleas, the judge sitting in, what did he interpret this as when the statement was made to him, judge, we ask that you direct a verdict of not guilty. And I think when you read the transcript and you see an interchange, what he's hearing is a defense attorney saying, treat that as an acquittal, period. What does he say? Does he say something? Does he use words like inconsistent or ambiguity? The judge says, I find this is an inconsistent verdict or either inconsistent or ambiguous. Right. So is that an indication to us in looking at this, that the judge felt that this was an argument, a Powell like argument of inconsistency, similar to what the justice Gorsuch, then judge Gorsuch analyzed in Shipley, rather than a judge, this is a double jeopardy. The verdict is final. You need to enter an acquittal right now. I think that's fair. Meaning the former rather than the latter. Yes. And if I could just take a little time to address the count two argument that counsel raised, I just want to focus the court. There are two issues here. One is a timing question and one is the quantum of proof. Putting aside the quantum of proof, I think ward law resolves that. The timing issue is this, just as this statute is not a strict liability statute, it doesn't confer immunity on somebody who in the middle of a, say, 30 minute sexual act, then decides to make a visual depiction. That's what happened here. We don't have to focus on when the defendant formed the intent. Before I entered this courtroom, I didn't intend to take a picture of the court, but if now I decide to do so and I take out my phone and record the next 10 minutes, I am doing so. I'm using this courtroom for the purpose of creating that visual depiction. I'd also like to make clear that the Fourth Circuit cases they rely upon. So you can, you can, can you form the intent after the act? Not after the act. In the middle. If he had taken a picture of her. Yes. Naked. No intercourse. Do you get a conviction? In that scenario, you'd need to know what else was going on. Those are the facts. Yeah. In that scenario. They have intercourse, no photographs, no filming. Just a picture. There's nothing so far. Okay. They have intercourse, they're done. And then she's naked on the bed and he then takes a photo of her. Child pornography under this statute. Under the statute, possibly. Yes. That's not a good answer. So is there. Your Honor. Where, because you're, you're focusing on the temporal nature or lack thereof of the intent requirement. And so I'm trying to probe that. So where do you assess intent in my hypothetical? In that scenario, if you don't treat the, in the, the isolated image as being a sexual act, if it's, if it's considered to be after the sexual act, which already took place, then, then you would not have a conviction. If you. Is having a minor pose naked purposefully sexually explicit conduct? Yes. Right. So the answer is if, if after the act that was described by Judge Jordan, the, the, the naked for me, that would be an sexually explicit conduct under the statute, right? Yes. Yes. And my point is simply. Except that in that scenario, that's what I was, that was going to be my next question to you. In that case, assuming she testifies, of course, the intent is clearly formed. Before the instruction for her to pose. And so it's a much easier case for you to prove to a jury of her testimony is accepted. It would be right. But, but here again, the point is we have the video component as well as the still photo. We know there was posing. And our point is simply, you don't have to decide his intent before they engaged in sex. The intent can be formed in the middle of a sexual encounter. Can I, can I jump in there? Because I think your opposing counsel agrees that if there is evidence opposing, that is intent evidence. I think his point is there is not now I've read the closing argument here. And in closing the prosecutor argued to the jury, you saw the video. I contend to you that there was posing done, correct? Yes. And the jury did, in fact, see the video, correct? Yes. Could the jury reasonably conclude from this video that there was posing? Yes, you can see it. I encourage, well, encourage is a strong word. I asked the court to look at it. You can tell there is posing from the video component and even from the position of the victim's hands. That's all obvious. And from the position of the defendant's body, you can tell the contortions he would have had to have gone, undergone in order to take the picture. The focus is, this is not a picture of two people in a romantic relation. This is a focus just on the genitalia. It's clearly the intent was to create a picture that was pornography. All right. Thank you very much. Thank you very much. Thank you. I'll start with the child pornography count. We vehemently disagree that there was any evidence of posing during this two-second picture taking. The government's theory espoused in the district court and in their brief is that Mr. Gatlin is guilty of the count simply because he chose to memorialize their sexual conduct. Every court of appeal who has heard that argument has rejected that argument. I do agree that Wardlow is a better case for the government than our case because there is explicit evidence from the minor's testimony that she was asked to pose. But the court is free to view the video for yourselves. We contend that there was no posing. And there's certainly no evidence that Mr. Gatlin asked her to pose or gave her any directions during their sexual intercourse. You're saying viewing the video, no reasonable jury can conclude that there was posing? Absolutely. Absolutely. Was there audio with the video? Not that I recall. Not that I recall. I don't believe so. So as I understand it, the mechanism of taking a picture is you're doing the act described in the indictment. And you have to reach for a phone, you have to, I think a lot of, let's assume it's an iPhone. I think it was an iPhone. But if it's an iPhone, I believe you can take a picture without having to actually type in your password and open it up. You can do it. You still have to press a button to get to the photograph. You have to press the button for the photograph. And for live video, as I understand it, you have to press for a sufficient amount of time for the live video. Is that, do all those things have to have happened? So yes, what constitutes a sufficient amount of time? I don't know. I know from my own life, I intend to take a still and I have a heavy thumb and it turns out live and either my kids or my dog is moving slightly. So it doesn't seem to me that that's inherently a volitional act. But even on those set of facts, every court of appeal has essentially said, including our court implicitly in Leibovitz about incidental photo taking during sexual conduct is not enough. And that's exactly what we have here. And if you rule in the government's favor in this case, you'll be creating a split with at least seven other courts of appeal. With regard to the count one issue, I don't think we have to belabor the point about what has to happen for a verdict to be final. I filed a 28 J letter earlier this week. There are two cases in the 11th circuit that lay out the requirements for when a verdict becomes final. The jury has signaled an end to their deliberations. The verdict has been published in open court and no juror has registered any dissent. And I think the government concedes that we had that. The government also conceded with regard to Judge Jordan's hypothetical that if nothing else had happened, the court should have entered a judgment of acquittal. And we do believe we preserve the issue because, again, by telling Judge Demetriou, who I think has been a judge for before I went to law school, he's a very experienced state and federal judge who clearly understood the import of this. And for just one correction from Mr. Caruso. I agree with you that Judge Demetriou is a very experienced and skilled . . . Objective. It's objective fact. But for an experienced jurist, if he is told that I'm directing you, please direct a verdict and there isn't anything further indicating I think there's a double jeopardy concern here, because that's a very different analysis. So how is Judge Demetriou supposed to know that he's supposed to analyze his case based on a different line of cases versus the Powell line of cases, which is inconsistent verdict? I think that's easy, Judge Lugo. Everyone knows, not only judges and lawyers, but law students, if a person is acquitted and their case is then sent back to the jury, then that's a classic case of double jeopardy. And we did cite two cases in our brief, Isom and Hernandez, that basically say, at least one of those cases says, simply by saying not guilty preserves a double jeopardy claim. So I believe we've preserved that. This whole issue of whether the judge accepted the verdict, I have been able to find no case law as to what that means. In my view, that's simply a ministerial act. At the end of a case, lawyers and judges routinely tell jurors, the case is now in your hands. They dispossess themselves of the case. And when the jury comes back and all the three criteria that this court and other courts have identified to when a verdict becomes final, that's the end of the case. And again, we believe we preserved the issue on plain error. And I just want to make one factual point, because this came up during my friend's argument. So what Judge Dimitriles actually said, he didn't say he believed, actually, to the jury that the verdict was inconsistent. He said, it has been brought to my attention that count one is inconsistent. We obviously believe that's inherently coercive. And it wasn't corrected by the remainder of the instruction. So we asked the court, for all the reasons articulated today and submitted in our briefs, that all three counts against Mr. Gatlin be vacated. And that if the court doesn't do that, to vacate his sentence and remand for resentencing. All right, thank you both very much. It's been very helpful. I do find one other thing. I want to thank the court for accommodating my schedule and moving the argument date to this morning. Not a problem. Thank you.